**SHROPSHIRE et ux. v. COMMERCE FARM CREDIT CO. et al.   (No. 2369.)***

(Court of Civil Appeals of Texas. Amarillo. Oct. 22, 1924. Rehearing Denied Nov. 19, 1924.)

I. **Usury** ⬥45—**Distinction between short and long term loans as to collection of maximum interest, stated.**

The highest allowable rate of interest may be legally collected in advance on short term loans, but, when interest nominally within legal rate is collected in advance on long-time loan, transaction may be usurious, within Const. art. 16, § 11, Rev. St. arts. 4979, 4980; the question being whether in fact the sum collectible for the entire term exceeds the amount of interest that could be legally collected on the principal amount of which borrower had use.

2. **Usury** ⬥42—**Long-term loan contract not exceeding maximum legal "rate" not usurious.**

Loan contract payable 10 years after date *held* not usurious, within Const. art. 16, § 11, Rev. St. art. 4979, 4980, fixing 10 per cent. per

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted February 4, 1925.

annum as maximum legal rate, the interest collectible for entire loan period, not exceeding 10 per cent. on amount of principal though interest payable for certain year of term exceeded legal amount chargeable for year; the word "rate" as used in statutes meaning proportional estimation according to some standard.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Rate.]

**3. Courts ⟐91(1)—Court of Civil Appeals free to decide point on which Supreme Court decisions conflict on weight of authority and better reasoning.**

Where Supreme Court decisions on cases involving same point of law were conflicting, Court of Civil Appeals *held* free to decide same point according to weight of authority and better reasoning.

**4. Usury ⟐113—Intention must be proved where contract on face is for legal interest only.**

Where contract on face is for legal rate of interest, intent to charge usury must be proved.

**5. Usury ⟐15—Express provision for rebatement of excess interest when acceleration clause enforced is unnecessary to avoid usury.**

While enforcement of acceleration clause in loan contract sometimes permits lender to receive usurious compensation during period borrower actually had loan, unless lender rebates unearned interest, express provision for rebatement in such contingency is unnecessary to avoid usury.

On Motion for Rehearing.

**6. Usury ⟐50—Method of computing interest to determine whether long-term loan is usurious stated.**

Whether long-term loan providing for payment of 9 per cent. annual interest evidenced by 10 notes, payable annually, representing 6 per cent., and 5 notes representing 6 per cent., payable for first five years, rendered contract usurious because of such years, must be determined by computing interest at 10 per cent., the highest legal rate, and running it through loan period, crediting excess payments of interest on five notes to principal.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Suit by J. E. Shropshire and wife against the Commerce Farm Credit Company and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Oxford & Oxford and M. J. Baird, all of Plainview, and Oxford & Johnson, of Stephenville, for appellants.

Terrell, Davis, Huff & McMillan, of San Antonio, and Williams & Martin, of Plainview, for appellees.

BOYCE, J. The appellants brought this suit to cancel a certain contract evidencing a loan of money on allegation that it was usurious, and also to recover double the amount of money paid as interest on the loan. A trial without a jury resulted in judgment for the defendants.

The facts pleaded and proven are substantially as follows: The plaintiffs borrowed the sum of $4,200 from one of the defendants, the Commerce Farm Credit Company, and executed their note to the said company for the sum of $4,200, payable 10 years after date. It had been agreed that the loan should bear interest at the rate of 9 per cent. per annum. As evidence of the interest the plaintiffs executed 10 interest coupons, each for the sum of $252, payable annually, which, it will be seen, represented interest on the loan at 6 per cent.; the additional interest "was squeezed into five equal annual payments," and evidenced by 5 separate notes, each for $252 payable one each year during the first 5 years of the loan period. The principal note and the 6 per cent. interest coupons were secured by a first lien deed of trust on land in Hale county. These instruments provide for maturity of the principal indebtedness, at the option of the holder, in case of default in the payment of the taxes assessed against said property during the existence of the loan or default in the payment of any installment of interest, or in case of the breach of other covenants contained in the deed of trust. The other 5 interest notes were secured by a second lien deed of trust on the same property; this deed of trust provides that in case of default in the payment of any of said notes, or "in case of the breach of any of the covenants, terms, or agreements in said first deed of trust, the whole of said notes hereby secured shall become due at the election of the holder, etc. The plaintiffs paid the interest notes becoming due for 2 years, a total of $1,008.

The propositions relied on by appellants for reversal fall under two general contentions: First, that, since the borrowers were required by the contract, during the first 5 years of the loan, to pay annually 12 per cent. of the principal of the loan as interest, the contract is, under our law, usurious; second, that the loan contract is usurious, because, under it, the period of the loan might be shortened by the lender under the acceleration clause, and result in the collection of usury, there being no provision in the contract for rebatement of interest already collected in case of such contingency. We will discuss these propositions in the order stated.

[1, 2] 1. We have no law in this state which makes it unlawful to collect interest in advance; even where the highest allowable rate of interest is collected in advance on short-time loans, and a year has been suggested as the limit under this rule, the transaction is generally held not to be usurious. Webb v. Pahde (Tex. Civ. App.) 43 S.

W. 19; Geisberg v. Mutual Building & Loan Association (Tex. Civ. App.) 60 S. W 478, 482; 27 R. C. L. pp. 225, 226. Obviously the retention or payment of interest in advance decreases the amount of money of which the borrower has the use during the loan period, and, logically, when the highest rate of interest allowable under the law is taken in advance, the interest really exceeds the rate allowed by law. We need not here go into the reasons why such advance collection as applied to short-term paper is held to be legal. But, when interest nominally within the legal rate is collected in advance on a long-time loan, the transaction may be usurious. See authorities above cited. But it is not the mere collection of interest in advance or the fact that in any one year of a larger loan period there is paid more interest than the interest for that year would amount to at the highest legal rate that makes the contract illegal; whether the contract is usurious is determined by ascertaining whether the interest collectible for the entire loan period exceeds the amount of interest that could be legally collected on the amount of the principal (making proper deductions therefrom for interest paid in advance) of which the borrower had the use during the period. See authorities above cited, and in addition thereto the following: Garland v. Union Trust Co., 63 Okl. 243, 165 P. 197; Clement Mortgage Co. v. Johnston, 83 Okl. 153, 201 P. 247; Green v. Conservative Loan Co., 153 Ark. 219, 240 S. W. 13; American Investment Co. v. Lyons (N. M.) 218 P. 183; American Investment Co. v. Roberts (N. M.) 218 P. 1037. These cases are directly in point. We do not wish to be understood as necessarily approving the conclusion reached on the facts in the New Mexico cases cited; for, where interest is paid in advance for more than 1 year, whether at the inception of the loan or during the time of its running, it might well be held that such advance payments should be deducted for the purpose of determining the amount of principal money of which the borrower actually had the use during the term of the loan, and on which interest is to be computed, for the purpose of determining the question of usury. We can see no reason in principle for making a distinction between advance payments made at the inception of the loan or at any time during the period. This suggestion is, however, immaterial here; it being conceded that, if the whole period of this loan is to be taken into consideration, there would be no usury, even if the advance payments are deducted from the principal on which interest computation is to be made as suggested. The contention of the appellants is that, if during any year of the loan more interest is collectible than 10 per cent of the principal, the transaction is, under our law, usurious. In this connection appellants argue that our law is different in terms from that of the states in which the decisions cited were rendered. Our Constitution and statutes provide that contracts for a "greater rate of interest than 10 per cent. per annum shall be deemed usurious." Constitution, art. 16, § 11; R. S. art. 4979, 4980. This language merely provides a standard; the word "rate" means "proportional estimation according to some standard." Century Dictionary. See, also, Chase v. New York Railway Co., 26 N. Y. 523, 526; Notes, 10 A. L. R. 1002. To apply this standard there must be taken into consideration the amount of money loaned, the period of the loan, and the interest charged. In this respect we find no material difference in our law and the laws of other states in which the decisions referred to were rendered. Our own Supreme Court, in the case of Mills v. Johnston, 23 Tex. 309–330, where it was considering a question of usury on a loan that ran for more than 1 year as affected by the retention of commissions paid in advance, which it was claimed should be regarded as interest, said:

"The law, in deciding whether a settlement involves usury or not, will look at the whole amount of interest reserved * * * and to the whole period of forbearance extended; and if the charges, properly imputable to interest, do not exceed the highest interest allowed by law, for the whole period of forbearance, then the settlement cannot be held to be usurious."

Practically the same test was stated by the Supreme Court in G. & H. Inv. Co. v. Grymes, 94 Tex. 609, 63 S. W. 860, 64 S. W. 778. In the case of Seymour Opera House Co. v. Thurston, 18 Tex. Civ. App. 417, 45 S. W. 815, the Seymour Opera House Company, on August 18, 1891, executed a note for $4,000, payable to the Panhandle Loan & Trust Company on July 1, 1896, executing interest coupons payable semiannually for interest at the rate of 8 per cent. per annum. As further interest on the loan the Opera House Company gave its note for $400, payable in semiannual installments of $100 each during the first period of the loan. The instruments provided for acceleration of maturity in case of default in payment of the interest coupons, and the principal note was declared to be due under such clause before the contract date of maturity. The defendant pleaded usury. It will be seen that during the first period of the loan, when the $100 semiannual payments were being made, the debtor was paying as interest more than 12 per cent. of the principal (the legal rate at that time). The court held the contract was not usurious, saying:

"In cases like this, where the right to declare the debt due, in case of default on the part of the maker of the note, is contained in the contract, the time of maturity should not be reckoned only to the day on which the maturity was afterwards declared, as contended for by appellants, but to the day fixed in the

written contract in good faith for the maturity, with grace added, unless it is waived."

The Supreme Court denied writ of error in this case. The case is directly in point here.

The appellants rely on Mathews v Interstate Loan Association (Tex. Civ. App.) 50 S. W. 604; Cain v. Bonner (Tex. Civ App.) 149 S. W. 704; and Shear v Hall (Tex. Com. App.) 235 S. W. 195, to sustain them in the proposition now under discussion. In the two cases first cited the court did consider the interest as of different periods during the loan. An examination of the facts in those cases will disclose that the contracts were usurious, whether the interest contracted for is computed over- the entire period, or only with reference to segregated periods of the loan. The question we are now considering was not discussed, so we do not consider these cases of controlling effect, particularly since the point has been expressly decided to the contrary by the Supreme Court in the cases referred to. The case of Shear v. Hall will be discussed in connection with the second proposition.

2. The decision in the case of Seymour Opera House Co. v. Thurston, supra, is directly in point on appellant's second contention, and is against their position. The authorities that we have considered in other jurisdictions, with one exception, are to the same effect. Cissna Loan Co. v. Gawley, 87 Wash. 438, 151 P. 792, L. R. A. 1916B, 807, Ann. Cas. 1917D, 722; Garland v. Union Trust Co., 63 Okl. 243, 165 P. 197–201; Goodale v. Wallace, 19 S. D. 405, 103 N. W. 651, 117 Am. St. Rep. 962, 9 Ann. Cas. 545; Tipton v. Ellsworth, 18 Idaho, 207, 109 P. 134–138; Eldred v. Hart, 87 Ark. 534, 113 S. W. 213, notes, Ann. Cas. 1917D, 725. The exception referred to is the case of Maxwell v. Jacksonville Loan & Improvement Co., 45 Fla. 425, 34 So. 255. In the case of Crider v. San Antonio Real Estate Building & Loan Association, 13 Tex. Civ. App. 401, 37 S. W. 238, the court said:

"It is on the assumption that contracts will be performed according to their stipulations by the parties to them, and not upon the supposition that they will be violated, that their legality should be determined. It would be an anomaly to make the violation of a contract the test of its legality—to say to a party, 'If you perform your agreement according to its terms, it is valid, and merits all the requirements of the law; but, if you fail to observe its provisions, it ipso facto becomes illegal,'—and thus place it in the power of one, by a breach of a legal agreement, by his own wrong, to avoid its performance, and to visit the punishment due his own iniquity upon him whose rights he has violated. The party who violated his contract alone should suffer and be held liable for the consequences of its violation."

The decision in the case of Shear v. Hall (Tex. Com. App.) 235 S. W. 195, does, however, seem to support appellants. The facts in that case, omitting irrelevant matters, were that Hall executed a note for $1,800, payable about 5 years after date, securing payment by deed of trust on land. This note bore interest at the rate of 6½ per cent. per annum, payable annually, and we may assume, though it does not appear to be pointedly stated in the opinion, that there was a provision for maturity of the $1,800 note in case of default in payment of the 6½ per cent. annual interest payments. The loan was an 8 per cent. loan, and the other 1½ per cent. annual interest was represented by a separate note for $148.80, payable in proportionate installments during the period of the loan. This note contained a provision for declaration of the maturity of the whole amount of $148.80, in case of default in payment of any of the installments as they became due. This note was secured by a second lien. deed of trust on the same land as that covered by the deed of trust securing the $1,800 note and the 6½ per cent interest. On default in the payment of the first installment becoming due on the $148.80 the holder declared this note to be due, and sold the land under the second lien deed of trust subject to the first lien of the other deed of trust. It was claimed that this sale was void because it was made under a usurious contract; that contention was upheld by the Supreme Court on opinion of the Commission of Appeals. The court in its opinion said that, "whether or not the contract was usurious in its inception, its execution operated to make it usurious," "since interest. to the extent of $148.80 was collected on $1,800 for 6 months, whch was at the rate of more than 17 per cent. per annum." With due respect to the court that rendered this opinion we must say that we do not follow it in this reasoning; the $148.80 was not collected as interest for 6 months on the $1,800 loan, but as interest at 1½ per cent. on the $1,800 for the entire period of the loan, more than 5 years. If there had been a declaration of maturity and collection of the $1,800 principal, the language might have been applicable; but without a forecasting that there would be. an advanced maturity of the $1,-800 principal note we do not see how it can be said that the contract was made usurious in its operation. It was, until such time, simply a case of collection of interest in advance. That is the case which the facts before us presents. The decision of Shear Co. v. Hall, if it is correct, can,· it seems to us, be upheld only on the ground that the contract was usurious in its inception, in that it authorized the collection of interest in advance in such a way as to make the interest usurious, if there was an acceleration during a certain period of the loan, of the maturity of the principal, since there was no clause providing for a remission of the interest collected in advance. The case of

Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332, is relied on in the opinion of Shear Co. v. Hall to sustain the decision. In that case the loan extended over a period of several years; the interest was evidenced by interest coupons, payable annually, and the deed of trust provided that in case of default in payment of any interest "the whole sum of money secured" thereby might be declared to be due and payable, at the option of the lender. Default was made in the payment of interest coupons, and there was a declaration of the maturity of the whole indebtedness. It was contended that the contract was usurious because the deed of trust authorized the lender, on declaration of maturity, to collect the unearned interest for the entire period of the loan. The Supreme Court was of the opinion that the contract should not be construed so as to authorize the holder to collect such unearned interest, but finally waived that point, and said:

"In any event (that is, even if the contract had been construed so as to authorize the collection of unearned interest) we agree with the conclusion of the judge before whom the case was tried, that said stipulation 'is to be construed as a penalty which will not be enforced except upon cancelling the unearned interest notes, and that it does not make the contract usurious.'"

[3] This language, it seems to us, sustains the appellees rather than the appellants, and does not sustain the decision in Shear Co. v. Hall. We do not know just what additional weight should be given to the opinion in Shear Co. v. Hall by the language of the Supreme Court adopting the recommendation of the Commission of Appeals as to the disposition of the case. As we have already stated, the Supreme Court denied writ of error in the case of Seymour Opera House Co. v. Thurston, 18 Tex. Civ. App. 417, 45 S. W. 815, and we canot reconcile the decision in that case with the decision in Shear Co. v. Hall. Under the circumstances, we feel free to decide the case according to what we conceive to be the weight of authority and the better reasoning.

[4] The language of the Constitution is that "all contracts for a greater rate of interest than 10 per cent. per annum, shall be deemed usurious." The statutes mean the same thing. There is no express agreement for the payment of usurious interest in this contract. If it is a contract for usury at all, it is implied because of the express provision for acceleration of the maturity of the principal and absence of a provision for adjustment or remission of interest collected in advance in that contingency. In construing the usury laws "the uniform construction in England has been (and it is equally applicable here) that to constitute usury, within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest; for if neither party intend it, but act bona fide and innocently, the law will not infer a corrupt agreement. Where, indeed, the contract, upon its very face, imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent; res ipsa loquitur. But, where the contract on its face is for legal interest only, there it must be proved that there was some corrupt agreement, or device or shift, to cover usury; and that it was in the full contemplation of the parties." Bank of U. S. v. Waggener, 9 Pet. 399, 9 L. Ed. 171; C. C. Slaughter Co. v. Eller (Tex. Civ. App.) 196 S. W. 704, 708; Henry v. Sansom, 2 Tex. Civ. App. 150, 21 S. W. 71, 27 R. C. L. p. 221.

[5] It is usual for contracts for the loan of money secured by liens on real or personal property to make provisions for the advance maturity of the principal indebtedness in case of breach of covenants for the preservation of the security, or default in the payment of interest as it accrues; the accumulation of unpaid interest itself impairs the security. It is the custom of the banks of the country to take out interest in advance on short-time loans so secured. The effect of the acceleration clause in such contracts, if they are invoked, is to forfeit the right of the borrower to the use of the money loaned during the full contract period; and while, in some cases, the result might be to permit the lender to receive more compensation than the law allows for the use of his money during the period the borrower may actually have it, unless there is a rebatement of unearned interest on declaration of maturity and collection of the principal, it has never been thought that such contracts are usurious, because they do not expressly provide for such rebatement in such contingency. It is generally held, in such cases, that the interest in excess of the lawful rate is not received by virtue of a contract to pay interest within the meaning of the usury laws, but as an incident to the forfeiture of the right of the borrower to the further use of the principal money. The forfeiture and its consequences are regarded as "penalties to be enforced only to the extent that they are not unconscionable." Cissna Loan Co. v. Gawley, supra, and other authorities cited in the same connection. The language of the Supreme Court in the case of Dugan v. Lewis indicates that this was the view the court then took of such contracts. Since we think that such conclusion is sustained by better reason and the great weight of authority, we conclude that the trial court was correct in holding that the contract in this case was not usurious.

This holding renders it unnecessary to pass on the contention urged by the appellees that the failure of the appellants to offer to pay, or make tender of payment of,

the principal indebtedness would preclude them from maintaining this suit.

Affirmed.

### On Motion for Rehearing.

Appellants' attorneys say in their motion for rehearing that, if they understand our opinion, then under our holding "any amount, say 50 per cent., or even more, might be deducted at any stage of the loan and be lawful, provided it, taken together with the rest of the interest contracted or paid, did not exceed the legal rate when calculated for the full term of the principal loan. If that be the law, there could never be a usurious loan where the rate was less than 10 per cent., because it matters not what form you put the interest in, it would always figure straight interest at that rate for the full term." We did not intend to announce a rule that would lead to such a conclusion, and that is not our understanding of what we said. We were of the opinion that in long-term loans, where interest in excess of the amount that would be due at the time of payment, calculated at the highest allowable legal rate to such time, is paid, such excess should be applied to the reduction of the principal and interest computations made on such basis for the purpose of settling the question of usury. We did not go to the trouble in the opinion of stating a computation applicable to the case at bar, because appellants' attorneys conceded in their briefs and in oral argument that, if the loan ran through the 10-year period, there would be no usury in it. The appellants in their motion withdraw this admission and submit figures which they contend show that the contract is in any event usurious. This necessitates a computation now.

[6] In making this calculation we compute the interest at 10 per cent., the highest legal rate allowable, and run it through the loan period, crediting excess payment of interest to principal, which we think is the correct method of determining the question of usury. During the first year of the loan period plaintiffs had the use of $4,200; interest at 10 per cent. on this sum would amount to $420. Under the contract they would have paid at the end of the first year the sum of $504. Under our theory, and that is the general rule for the application of payments in such cases (Tooke v Bonds, 29 Tex. 420; Clark v. Brown, 48 Tex. 212; notes, 13 Ann. Cas. 711; 15 R. C. L. p. 31), $420 of this amount should be applied to the payment of the accrued interest, and $84 on the principal. For the second year we start with a new principal amount, to wit, $4,116, and follow this process through the first 5-year period, at the end of which the principal will have been reduced to $3,687.17. Thereafter the annual payments of $252 would not pay the interest at 10 per cent. We pretermit a determination as to whether this deficiency should, during the latter period of the loan, be charged back to principal, since it does not become necessary to determine whether that would be allowable under the facts of this case. But we compute the interest for the remaining 5 years at 10 per cent. on $3,687.17, the amount being $1,843.55. At the end of the 10 years the makers, in order to have paid off the note under this method of calculation, would have paid the following amounts: $2,520 paid during the first 5 years; $3,687.17 balance due on principal and $1,843.55 interest for the last 5 years of the loan, a total of $8,050.72. If the contract be carried out according to its terms, the maker of the note would pay $4,200 and $3,780, a total of $7,980. So that, if our calculation and the theory on which it is based are correct, the contract is not usurious.

The appellants argue that the case of Parks v. Lubbock, 92 Tex. 635, 51 S. W. 322, is contrary to Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332, referred to in our opinion, and to our own holding. We did not overlook this case, though it is not mentioned in the former opinion, in our consideration of this matter. In our opinion it is distinguishable from Dugan v. Lewis and our own holding. In Parks v. Lubbock there was an express agreement to pay interest on the principal, and matured interest, at the rate of 12 per cent. after maturity; and the court held this agreement made the note usurious. It was thus an express agreement to pay more than the legal rate of interest for the detention of the money. That is not the case here, but an agreement which provides, in certain contingencies, for a forfeiture of the right of the borrower to retain the principal sum to the maturity date of the note. There is no express provision for the forfeiture of unearned interest in that event, and, on the other hand, no express agreement for its refunding as a condition to the exercise of the right to accelerate the maturity of the principal. There is thus no express agreement to pay a sum in excess of the legal interest for the use or detention of the money. If there is anything in the contract that produces such result it is incident to the exercise of the right to declare the note due prior to the contract date of maturity, and, under the authoriy of Dugan v. Lewis, and the other authorities which we cited, a court of equity might prevent the holder of the note from exercising this right, except upon accounting for the unearned interest that had been paid, so that the provision for the acceleration of maturity of the note "does not make the contract usurious."

Overruled.